JUDGE FURMAN



Michael D. Palmer
Matthew Kadushin
Maimon Kirschenbaum
JOSEPH & KIRSCHENBAUM LLP
233 Broadway, 5th Floor
New York, NY 10279
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiffs*





**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

**DARLENE RUESS and JOANN FLAHERTY,**

**Plaintiffs,**

**v.**

**NBCUNIVERSAL MEDIA, LLC f/k/a NBC UNIVERSAL, INC.,**

**Defendants.**

-----------------------------------------------------------x

**CASE NO.**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Darlene Ruess and Joann Flaherty allege as follows:

## PRELIMINARY STATEMENT

1. Plaintiffs bring this action against Defendant NBCUniversal Media, LLC f/k/a NBC Universal, Inc. ("NBC" or "Defendant") to remedy sex discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), New York State Human Rights Law, N.Y. EXEC. LAW § 290 *et seq.* ("NYHRL"), and the New York City Administrative Code § 8-101 *et seq.*

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiffs' Title VII claims pursuant to 28 U.S.C. §1331, because the claims arise under the laws of the United States. This

Court has supplemental subject matter jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a), because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this District because Defendant conducts business in this District, and a substantial part of the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

4. Defendant NBCUniversal Media, LLC f/k/a NBC Universal, Inc. is a media and entertainment company with its headquarters located in New York, New York.

5. Plaintiff Ruess worked for Defendant as a graphic designer from 1998 until December 2008.

6. Plaintiff Flaherty worked for Defendant as a graphic designer from 1994 until December 2008.

7. Plaintiffs were employed by Defendant in New York, and all relevant actions occurred in New York.

8. Plaintiffs were "employees" of Defendant within the meaning of all applicable statutes, and NBC was an "employer" of the Plaintiffs within the meaning of all applicable statutes.

9. NBC employs over 15 employees.

## CONDITIONS PRECEDENT

10. The New York City Commission on Human Rights has been notified and sent a copy of this complaint.

11. Plaintiffs Flaherty and Ruess filed charges of discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC") against NBC, which satisfied the requirement of 42 U.S.C. § 2000e-5, on or about October 13, 2009. This filing was made within 300 days of all alleged Title VII violations by Defendant.

12. The EEOC sent a copy of the charges to the New York State Division of Human Rights.

13. Over the next two-and-a-half years, the EEOC investigated Plaintiffs' claims against Defendant.

14. On May 24, 2012, the EEOC issued Determinations in which the EEOC found reasonable cause that Plaintiffs were the subject of discrimination by Defendant. (True and correct copies of the Determinations are attached hereto as Exhibit A.)

15. The Determinations were mailed to Plaintiffs' Counsel, Joseph, Herzfeld, Hester & Kirschenbaum LLP ("Joseph & Kirschenbaum") at their current address at 233 Broadway, 5th Floor, New York NY 10029.

16. Unbeknownst at the time to Plaintiffs and their Counsel, on September 14, 2012, the EEOC issued Plaintiffs' Notices of their Rights to Sue. The Notices were mailed to Plaintiffs' Counsel at their former business address (757 Third Avenue, 25th Floor, New York, NY 10017) despite the fact that the EEOC had been informed that Joseph & Kirschenbaum had previously moved from that location. The Notices of Plaintiffs' Rights to Sue were returned to sender.

17. Ms. Flaherty and Ms. Ruess also did not personally receive a copy of the Notices of Right to Sue.

18. The EEOC did not call or otherwise inform the Plaintiffs or their Counsel that the Notices of Right to Sue were issued. In addition, the Unites States Postal Service did not notify Plaintiffs or their Counsel that the Postal Service had attempted to deliver a letter from the EEOC.

19. As Plaintiffs had not received a copy of the Notices of their Right to Sue, on December 21, 2012, Plaintiffs' Counsel sent a letter to the EEOC requesting that the agency issue Notices of Plaintiffs' Right to Sue.

20. After receiving no response from the EEOC, Plaintiffs' Counsel contacted the EEOC on January 30, 2013 and once again requested Notices of Plaintiffs' Right to Sue.

21. On January 31, 2013, Plaintiffs' Counsel received an envelope from the EEOC post-marked January 30, 2013 which contained the Notices of Plaintiffs' Right to Sue.

22. This complaint was filed within one (1) day of Plaintiffs' receipt of the Notices of their Right to Sue.

23. Accordingly, Plaintiffs received the Notices of their Right to Sue on January 31, 2013, and this complaint is filed well within ninety (90) days of Plaintiffs' receipt of the Notices.

**FACTS**

24. Defendants committed the following alleged acts knowingly, intentionally and willfully.

25. In 1994, Ms. Flaherty was hired as a graphic designer in the NBC News Graphics Department. In or around 1996, she joined the Sports Graphic Department at the request of Sue Bennett, Art Director for the Sports Graphic Department.

26. During her employment Ms. Flaherty, designed, animated, and edited graphics for news and sports programs, including multiple Olympics, Wimbledon, and the Preakness Stakes.

27. Ms. Ruess was hired as a graphic designer in the NBC Sports Graphics Department in 1998.

28. During her employment, Ms. Ruess designed, animated and edited graphics for NBC programs, including multiple Olympics, U.S. Open Golf, the Ryder Cup, French Open, NASCAR, and NBA.

29. Ms. Flaherty and Ms. Ruess were highly regarded for the quality of their work, and they won numerous accolades.

**Gender Bias Under New Department Leadership**

30. In or around 2004, John Schleef was hired by NBC as the new Art Director of the Sports Graphics Department, replacing then-Art Director, Sue Bennett. Mr. Schleef and his team of men worked out of offices in Connecticut.

31. Under Mr. Schleef's leadership the department became a boys club.

32. Women were pushed out and throughout Plaintiffs' employment, Mr. Schleef hired only male employees.

33. In or around March 2008, Mr. Schleef and two men in his team moved to NBC's New York City office, where Plaintiffs worked.

34. Mr. Schleef made it clear that he generally wanted men working on projects, and Plaintiffs found they were underutilized.

35. Ms. Flaherty spoke with Mr. Schleef about her interest in working on other projects, including the NFL. (At that time, there were no women working on the NFL within the department.)

36. Mr. Schleef dismissed Ms. Flaherty's requests, and at one point, said that he had no use for Ms. Flaherty.

37. Under Mr. Schleef, women were given less preferential treatment than men in the department.

38. For example, of the 14 individuals working on graphics for the 2008 Olympics, only two were women. However, it was only Ms. Ruess and the other female worker on the project who were required to work the overnight shift.

**NBC's Termination Of Plaintiffs**

39. Without warning, on December 18, 2008, Ms. Flaherty and Ms. Ruess were terminated.

40. At the time of Plaintiffs' termination, NBC suggested that they were being laid off because of the economic climate. However, the department had just hired two male graphic designers.

41. Rather, it is clear that NBC's decision to terminate Plaintiffs was the result of discriminatory animus.

**NBC's Failure To Rehire Plaintiffs**

42. Following her termination, Ms. Ruess complained to David Steel that Plaintiffs' termination appeared to be due to their gender. Ms. Ruess pointed out that now there were virtually no female designers left in the department.

43. Plaintiffs later filed a complaint/grievance through their union alleging gender discrimination.

44. On or around December 23, 2008, Ms. Flaherty talked to Carmen White, a manager in the NBC News Graphics Department, who informed Ms. Flaherty that she should be able to return to work for NBC in the News Graphic Department in January 2009.

45. However, when Ms. Flaherty later contacted Ms. White about the position, Ms. White was evasive and ultimately refused to return Ms. Flaherty's phone calls.

46. Ms. Flaherty applied for jobs at NBC and communicated multiple times with the NBC Human Resources Department to inquire about job openings. Unfortunately, Ms. Flaherty's efforts turned out to be fruitless.

47. Likewise, following her termination, Ms. Ruess applied to work for NBC but never received a response.

48. Despite their known skills, Plaintiffs were not given the opportunity to return to work for NBC after their termination.

49. However, Mark Stroming, a male designer who was terminated at approximately the same time as the Plaintiffs, was rehired by NBC early 2009. Despite the fact that the Plaintiffs had both worked for NBC significantly longer than Mr. Stroming, neither Plaintiff was offered the job opening.

50. It is clear that Plaintiffs were terminated – and then not rehired – due to their gender and the fact that they had complained of sex discrimination.

51. As a result of Defendant's discrimination and retaliation, Plaintiffs have suffered significant loss of income.

52. Further, Defendant's discrimination and retaliation has caused Plaintiffs to suffer severe emotional distress, damage to Plaintiffs' good name and reputation, lasting embarrassment, humiliation and anguish.

**FIRST CLAIM FOR RELIEF**
**(Title VII – Discrimination)**

53. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

54. By the above acts, including without limitation, the decisions to terminate Plaintiffs, Defendant violated Title VII by discriminating against Plaintiffs because of their sex.

55. Defendant discriminated against Plaintiffs in regard to the terms, conditions, and privileges of their employment and by terminating Plaintiffs because of their sex.

56. Defendant's acts were with malice and reckless disregard for Plaintiffs' federally protected civil rights.

57. As a direct and proximate consequence of Defendant's discrimination, Plaintiffs have suffered, and continue to suffer, substantial monetary damages, including, but not limited to, a loss of income, including past salary, future salary, and company-sponsored benefits.

58. As a direct and proximate consequence of Defendant's discrimination, Plaintiffs have suffered, and continue to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, damage to Plaintiffs' good name and reputation, lasting embarrassment, humiliation and anguish.

59. Defendant's conduct was outrageous and malicious, was intended to injure Plaintiffs, and was done with reckless indifference to Plaintiffs' protected civil rights, entitling Plaintiffs to an award of punitive damages.

**SECOND CLAIM FOR RELIEF**
**(Title VII – Retaliation)**

60. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

61. Following Plaintiffs' complaints of discrimination, Defendant retaliated against Plaintiffs in violation of Title VII, including, without limitation, by failing to rehire Plaintiffs.

62. Defendant retaliated against Plaintiffs because they opposed discriminatory practices.

63. Defendant's acts were with malice and reckless disregard for Plaintiffs' federally protected civil rights.

64. As a direct and proximate consequence of Defendant's retaliation, Plaintiffs have suffered, and continue to suffer, substantial monetary damages, including, but not limited to, a loss of income, including past salary, future salary, and company-sponsored benefits.

65. As a direct and proximate consequence of Defendant's retaliation, Plaintiffs have suffered, and continue to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, damage to Plaintiffs' good name and reputation, lasting embarrassment, humiliation and anguish.

66. Defendant's conduct was outrageous and malicious, was intended to injure Plaintiffs, and was done with reckless indifference to Plaintiffs' protected civil rights, entitling Plaintiffs to an award of punitive damages.

**THIRD CLAIM FOR RELIEF**
**(NYHRL – Discrimination)**

67. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

68. By the above acts, including without limitation, the decisions to terminate Plaintiffs, Defendant violated NYHRL by discriminating against Plaintiffs because of their sex.

69. Defendant discriminated against Plaintiffs in regard to the terms, conditions, and privileges of their employment and by terminating Plaintiffs because of their sex.

70. As a direct and proximate consequence of Defendant's discrimination, Plaintiffs have suffered, and continue to suffer, substantial monetary damages, including, but not limited to, a loss of income, including past salary, future salary, and company-sponsored benefits.

71. As a direct and proximate consequence of Defendant's discrimination, Plaintiffs have suffered, and continue to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, damage to plaintiff's good name and reputation, lasting embarrassment, humiliation and anguish.

**FOURTH CLAIM FOR RELIEF**
**(NYHRL – Retaliation)**

72. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

73. Following Plaintiffs' complaints of discrimination, Defendants retaliated against Plaintiffs in violation of NYHRL, including, without limitation, by failing to rehire Plaintiffs.

74. Defendant retaliated against Plaintiffs because they opposed discriminatory practices.

75. As a direct and proximate consequence of Defendant's retaliation, Plaintiffs have suffered, and continue to suffer, substantial monetary damages, including, but not limited to, a loss of income, including past salary, future salary, and company-sponsored benefits.

76. As a direct and proximate consequence of Defendant's retaliation, Plaintiffs have suffered, and continue to suffer, substantial non-monetary damages, including, but not

limited to, emotional distress, damage to plaintiff's good name and reputation, lasting embarrassment, humiliation and anguish.

**FIFTH CLAIM FOR RELIEF**
**(New York City Administrative Code – Discrimination)**

77. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

78. By the above acts, including without limitation, the decisions to terminate Plaintiffs, Defendant violated the New York City Administrative Code § 8-101 *et seq*. by discriminating against Plaintiffs because of their sex.

79. Defendant discriminated against Plaintiffs in regard to the terms, conditions, and privileges of their employment and by terminating Plaintiffs because of their sex.

80. As a direct and proximate consequence of Defendant's discrimination, Plaintiffs have suffered, and continue to suffer, substantial monetary damages, including, but not limited to, a loss of income, including past salary, future salary, and company-sponsored benefits

81. As a direct and proximate consequence of Defendant's discrimination, Plaintiffs have suffered, and continue to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, damage to plaintiffs' good name and reputation, lasting embarrassment, humiliation and anguish.

82. Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiffs' protected civil rights, entitling them to an award of punitive damages.

**SIXTH CLAIM FOR RELIEF**
**(New York City Administrative Code – Retaliation)**

83. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

84. Following Plaintiffs' complaints of discrimination, Defendants retaliated against Plaintiffs in violation of the New York City Administrative Code § 8-101 *et seq.*, including, without limitation, by failing to rehire Plaintiffs.

85. Defendant retaliated against Plaintiffs because they opposed discriminatory practices.

86. As a direct and proximate consequence of Defendant's retaliation, Plaintiffs have suffered, and continue to suffer, substantial monetary damages, including, but not limited to, a loss of income, including past salary, future salary, and company-sponsored benefits

87. As a direct and proximate consequence of Defendant's retaliation, Plaintiffs have suffered, and continue to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, damage to plaintiffs' good name and reputation, lasting embarrassment, humiliation and anguish.

88. Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiffs' protected civil rights, entitling them to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

A. Declaring that Defendant's actions and practices violated the Title VII, the NYHRL, and the New York City Administrative Code;

B. Permanently enjoining Defendant from engaging in actions or practices that discriminate against any employees or job applicants because of their sex;

C. Awarding damages for lost wages to be determined at trial, including all applicable front pay and back pay and reimbursement for any and all lost benefits;

D. Awarding general and compensatory damages to be determined at trial, including but not limited to emotional distress, damage to plaintiffs' good name and reputation, lasting embarrassment, humiliation and anguish;

E. Awarding pre-judgment and post-judgment interest, as provided by law;

F. Awarding Plaintiffs' reasonable attorney's fees and costs, as provided by law;

H. Awarding punitive or exemplary damages up to the statutory limits, if any; and

I. For such other relief as this Court deems just and proper.

Dated: New York, New York
February 1, 2013

Respectfully submitted,

Michael D. Palmer
Matthew Kadushin
Maimon Kirschenbaum
JOSEPH & KIRSCHENBAUM LLP
233 Broadway, 5th Floor
New York, NY 10279
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiffs*

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all causes of action and claims properly triable by a jury.

# Exhibit A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

Spencer H. Lewis, Jr.
District Director

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
Phone: (212) 336-3620
TTY: (212) 336-3622
General Fax: (212) 336-3625

**DETERMINATION**

**Charging Party:**

Darlene Ruess
c/o Michael D Palmer, Esq.
Joseph, Herzfeld Hester & Kirschenbaum, LLP.
233 Broadway, 5th Floor
New York, New York 10279

**Respondent**

NBC Corporation
c/o Stephen Malone, Esq.
Vice-President
30 Rockerfeller Plaza, 10th Floor
New York, NY 10112

Re: ***Darlene Ruess v. National Broadcasting Corporation***
***EEOC Charge Number: 520-2010-00152***

On behalf of the U.S. Equal Employment Opportunity Commission ("EEOC" or "Commission"), I issue the following Determination on the merits of the above referenced Charge of Discrimination ("Charge"), filed under Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

On October 13, 2009, Charging Party Darlene Ruess ("Charging Party") filed a Charge of Discrimination ("Charge") with the EEOC alleging that in December 2008, she was notified her position was being eliminated, but it was not. She was also told that she was being terminated because she did not know how to use certain computer programs. Charging Party had over ten years of service with Respondent and had received exemplary performance appraisals and won numerous awards for programs on which she took part. Respondent nevertheless terminated her because of her sex (female) in violation of Title VII, according to the charge.

Charging Party alleges that during her employment with Respondent, she never had any performance problems or issues with learning new design programs. She was a member of the team working on the 2004 Olympics for which NBC received an Emmy Award. Following the Olympics, Charging Party trained on an editing and design system called Smoke, which she was advised to learn.

In October 2008, Respondent sent out a message saying that there would be companywide lay-offs. On December 18, 2008, Charging Party, along with co-filer Ms. Joann Flaherty, were selected for termination. Charging Party was told that she was terminated due to the economic climate and because the company was getting rid of compositors. Charging Party also learned that Respondent was moving to Cinema 4-D, a program she was not given the opportunity to learn. To the contrary, Charging Party was recently advised to learn a program called "Smoke," which she did.

Respondent denies Charging Party's allegations of sex discrimination. Respondent states that Charging Party was terminated due to the fact that she was a stand-alone compositor and that graphic design had evolved to the point that her skills were no longer needed. It also claims that it let go two other stand-alone compositors along with Charging Party. Respondent further maintains that Charging Party had numerous opportunities to learn design skills such as Cinema 4-D and that she failed to take advantage of training opportunities that were offered to all employees. Respondent maintains that since Charging Party did not avail herself of any of the training opportunities offered, it was due to her limited skill set, that she was terminated.

The evidence of record leads the Commission to conclude that Respondent terminated Charging Party because of her sex. Respondent's contentions that the Charging Party failed to avail herself of training opportunities and did not learn Cinema 4-D fails to withstand scrutiny. Although, Charging Party may have been able to learn the Cinema 4-D program through the on-line university, the program was not installed on her computer, thus she was unable to work with and learn the program. Throughout her career with Respondent, Charging Party learned many different programs and would have learned Cinema 4-D.

Three people were let go in the lay-offs, two females and one male. The male employee was subsequently rehired by Respondent. He had no knowledge of Cinema 4-D and had less experience than either of the women. Evidence obtained during the investigation, including a witness statement, shows that Cinema 4-D was put on most of the workstations, with the exception of Charging Party's and Ms. Flaherty's. Further, the witness states that following the termination of Charging Party, a copy of the program was put onto Ms. Flaherty's old workstation and another female employee, Stephanie Pistone, was brought into the department. She did not know Cinema 4-D, and was given time to learn the program. There were also male designers hired after Charging Party, with less experience than Charging Party, who had the Cinema 4-D program loaded onto their workstations allowing them to use and learn the program.

Equally significant, is that Ms. Pistone did not have the experience of Charging Party or Ms. Flaherty, and was given the opportunity to learn the Cinema 4-D program. This took place following Charging Party's complaint to the union of gender discrimination, which she was told is still pending.

Based on the information gathered during the Commission's investigation of this Charge, there is reasonable cause to determine that Respondent's actions violated Title VII.

Title VII requires that if the Commission determines that there is reason to believe that a violation has occurred, it shall endeavor to eliminate the alleged unlawful employment practice by informal methods of conference, conciliation and persuasion.

Having determined that there is reason to believe that a violation has occurred, the Commission now invites the Respondent to join with it in a collective effort toward a just resolution of this matter. A representative of this office will be in contact with the Respondent in the near future to begin the conciliation process. Disclosure of information obtained by the Commission during the conciliation process will be made in accordance with the statute and Section 1601.26 of the Commission's Procedural Regulations. If the Respondent declines to enter into settlement discussions, or when, for any other reason, the Commission's representative is unable to secure

a settlement acceptable to the office Director, Respondent will be informed in writing of the court enforcement alternative of the Commission.

On behalf of the Commission:

Kevin J. Berry
District Director

5/24/12
Date



U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office

Spencer H. Lewis, Jr.
District Director

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
Phone: (212) 336-3620
TTY: (212) 336-3622
General Fax: (212) 336-3625

# DETERMINATION

**Charging Party:**

Joann Flaherty
c/o Michael D Palmer, Esq.
Joseph, Herzfeld Hester & Kirschenbaum, LLP.
233 Broadway, 5th Floor
New York, New York 10279

**Respondent**

NBC Corporation
c/o Stephen Malone, Esq.
Vice-President
30 Rockerfeller Plaza, 10th Floor
New York, NY 10112

**Re:** ***Joann Flaherty v. National Broadcasting Corporation***
***EEOC Charge Number: 520-2010-00151***

On behalf of the U.S. Equal Employment Opportunity Commission ("EEOC" or "Commission"), I issue the following Determination on the merits of the above referenced Charge of Discrimination ("Charge"), filed under Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

On October 13, 2009, Charging Party Joann Flaherty ("Charging Party") filed a Charge of Discrimination ("Charge") with the EEOC alleging that in December 2008, she was notified her position was being eliminated, but it was not. She was further told that she was being terminated because she did not know how to use certain computer programs. Charging Party has over ten years of service with Respondent and has received exemplary performance appraisals and won numerous awards for productions on which she took part. Respondent nevertheless terminated her because of her sex (female) in violation of Title VII, according to the charge.

Charging Party alleges that during her employment with Respondent, she never had any performance problems or issues with learning new design programs. She was a member of the team working on the 2004 Olympics for which NBC received an Emmy Award. When NBC won the rights to cover NFL football, Charging Party informed John Schleef, Art Director, that she would like to work on NFL coverage, but he ignored her requests. In addition, she noticed that most of her colleagues were being trained on a new program called Cinema 4-D, but when she requested to be trained on the program, she was told that there were not enough licenses.

In October 2008, Respondent sent out a message saying that there would be companywide lay-offs. On December 18, 2008, Charging Party, along with co-filer Ms. Darlene Ruess, were selected for termination. Charging Party was told that she was terminated due to the economic climate and because the company was getting rid of compositors. Charging Party was also told it was because she was not familiar with Cinema 4-D, a program she was not afforded the

opportunity to learn. Further, Respondent hired two males in September/October 2008 and trained them on Cinema 4-D.

Respondent denies Charging Party's allegations of sex discrimination. Respondent states that Charging Party was terminated because she was a stand-alone compositor and that graphic design had evolved to the point that her skills were no longer needed. It also claims that it let go two other stand-alone compositors along with Charging Party. Respondent further maintains that Charging Party has numerous opportunities to learn design skills such as Cinema 4-D and that she failed to take advantage of training opportunities that were offered to all employees. Respondent maintains that since Charging Party did not avail herself of any of the training opportunities offered, it was due to her limited skill set, that she was terminated.

The evidence of record leads the Commission to conclude that Respondent terminated Charging Party because of her sex. Respondent's contentions that the Charging Party failed to avail herself of training opportunities and did not learn Cinema 4-D fails to withstand scrutiny. Although, Charging Party may have been able to learn the Cinema 4-D program through the on-line university, the program was not installed on her computer, thus she was unable to work with and learn the program. Throughout her career with Respondent; Charging Party learned many different programs and would have learned Cinema 4-D. In fact, Charging Party requested to have her system updated with the program and was told that there were not enough licenses available.

Of the three people let go in the lay-offs, two were females and one was a male. The male employee was later rehired by Respondent. He had no knowledge of Cinema 4-D and had less experience than either Charging Party or Ms. Ruess. Evidence obtained during the investigation, including a witness statement, shows that Cinema 4-D was put on most of the workstations, with the exception of Charging Party's and Ms. Ruess'. Further, the witness states that following the termination of Charging Party, a copy of the program was put onto Charging Party's old workstation and another female employee, Stephanie Pistone, was brought into the department. She did not know Cinema 4-D, and was given time to learn the program. There were also male designers, hired after Charging Party, with less experience than Charging Party, who had the Cinema 4-D program loaded onto their workstations allowing them to use and learn the program.

Equally significant is that Ms. Pistone did not have the experience of Charging Party or Ms. Ruess, and was given the opportunity to learn the Cinema 4-D program. This took place following Charging Party's complaint to the union of gender discrimination, which she was told is still pending.

Based on the information gathered during the Commission's investigation of this Charge, there is reasonable cause to determine that Respondent's actions violated Title VII.

Title VII requires that if the Commission determines that there is reason to believe that a violation has occurred, it shall endeavor to eliminate the alleged unlawful employment practice by informal methods of conference, conciliation and persuasion.

Having determined that there is reason to believe that a violation has occurred, the Commission now invites the Respondent to join with it in a collective effort toward a just resolution of this matter. A representative of this office will be in contact with the Respondent in the near future to

begin the conciliation process. Disclosure of information obtained by the Commission during the conciliation process will be made in accordance with the statute and Section 1601.26 of the Commission's Procedural Regulations. If the Respondent declines to enter into settlement discussions, or when, for any other reason, the Commission's representative is unable to secure a settlement acceptable to the office Director, Respondent will be informed in writing of the court enforcement alternative of the Commission.

On behalf of the Commission:

Kevin J. Berry
District Director

5/24/12
Date